*E-Filed 12/22/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT MITCHELL et al., | No. C 09-05306 RS |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | |
| KAISER FOUNDATION HEALTH PLAN, INC., et al, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Herbert Mitchell and the Law Offices of Bruce E. Krell, Inc., filed a Complaint on November 9, 2009, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1962 ("RICO"), Section 1983 of the Civil Rights Act, and various state law claims. On May 12, 2010, this Court dismissed the section 1983 claim without leave to amend, and granted leave to amend the other claims. Plaintiffs filed their First Amended Complaint on June 14, 2010, and included an additional claim for violation of the Federal Debt Collection Practices Act ("FDCPA"). Defendants filed this motion on July 22, 2010. For the reasons stated below,

defendants' motion to dismiss shall be granted with leave to amend all claims, except the RICO claim which shall be dismissed without leave to amend.

## II.  FACTS

According to the FAC, Mitchell had a Kasier insurance policy and received extensive treatment at a Kasier facility after being injured in a car accident in San Francisco in 2006.  The FAC alleges that Mitchell retained attorney Bruce Krell to represent him in a personal injury lawsuit against a third party involved in the accident, and that Krell eventually obtained a settlement on his behalf.  Allegedly, the attorney defendants who represented Kaiser, "tried to interfere in the settlement" and asserted a "fraudulent" lien in the amount of $73,000.  A medical billing dispute ensued, and Kaiser and the attorney defendants allegedly requested the matter be submitted to binding arbitration pursuant to the terms of Mitchell's insurance policy.

Plaintiffs took the position that arbitration was not warranted.  Allegedly, upon Kaiser's failure to contest the non-arbitrability of the case, the arbitrator "closed the file."  Plaintiffs aver, however, that the file was reopened in October of 2009 at Kaiser's behest, in an attempt to "force Plaintiffs back into Kaiser arbitration."  The current status of the arbitration is unclear from the FAC.

Based on these events, plaintiffs claim defendants have violated RICO and the FDCPA, and have incurred liability for negligence, breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing.  In the May 12 Order granting defendants' motion to dismiss the original Complaint, this Court held that the RICO elements were alleged in a cursory way, and that the Complaint did not satisfy the specific pleading requirements for fraud set forth in Federal Rule of Civil Procedure 9(b).  In dismissing the state law claims, this Court noted that the Complaint did not allege any damages plaintiffs incurred as a result of defendants' conduct. Plaintiffs' section 1983 claims were dismissed without leave to amend because Kaiser was not a state actor, and therefore could not be liable under that statute.

The FAC contains some revisions to the original Complaint.  It avers that defendants violated the FDCPA by engaging in "abusive and deceptive" conduct, including misrepresenting the

No. C 09-05306
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

2

amount of debt owed to defendants, and seeking an unjustified amount of debt. Additionally, plaintiffs allege that Kaiser failed to abide by the "common fund" rule because the bills plaintiffs received from Kaiser did not include deductions for its pro rata share of expenses from any recovery. In order to augment the RICO claim, the FAC alleges that Kaiser sent letters to Mitchell through the United States Postal Service and via fax. Additionally, plaintiffs claim they incurred the following damages as a result of defendants' conduct: (1) the costs and expenses incurred when plaintiffs hired an expert in Mitchell's personal injury case to determine the value of services rendered by Kaiser; and (2) $40,000 in legal fees Mitchell incurred during the Kaiser arbitration proceedings.

On September 1, 2010, plaintiffs reached a settlement with defendants Office of Independent Administration ("OIA") and Marcella Bell, and dismissed both with prejudice. Accordingly, the remaining defendants are plaintiffs' insurer Kaiser, Kaiser's individual attorneys Thomas Dunn and Robert Keisler, and the law firm with which they are associated, Gibson & Sharps.

### III.  LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008). Although they may provide the framework for a complaint, legal conclusions need not be accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

A court may deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir.2008) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)). Where "the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco Partners, LLC, v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); (*citing In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 845 (9th Cir. 2003)).

## IV.  DISCUSSION

A.     Request for Judicial Notice

As an initial matter, Kaiser asks the Court to take judicial notice of seven billing statements relating to Mitchell's 2006 car accident. Plaintiffs alluded to, but did not attach these billing statements to the FAC. As a general rule, the Court may not consider matters beyond the pleadings on a motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989). The Court may take judicial notice of documents if they are referred to in the Complaint and neither party challenges the authenticity of the documents. *See, e.g., Branch*, 14 F.3d at 454. Plaintiffs do, however, challenge the authenticity of these documents. Specifically, plaintiffs dispute whether they received these billing statements in a timely fashion, and whether the billing statements were actually transmitted. In light of the fact that these billing statements are not a matter of public record, and that plaintiffs challenge the authenticity of the statements, defendant's request for judicial notice shall be denied and the Court will not consider the billing statements for purposes of this motion.

No. C 09-05306
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

4

B.     RICO Claim

The FAC first alleges claims arising under 18 U.S.C. § 1964(c) (substantive RICO claims) and (d) (conspiracy to commit a RICO violation). The essential elements of a substantive RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001). *See also* 18 U.S.C. § 1964(c).

1. Pattern of Activity

In order to demonstrate a pattern of racketeering activity under RICO, plaintiffs must "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). The Ninth Circuit has recognized a distinction between numerous acts in relation to a single episode, and a series of separate, related acts. *Compare Sever v. Alaska Pulp Corp*. 978 F.2d 1529, 1535 (9th Cir. 1992) (employer engaging in a series of retaliatory actions in response to a single incident of the employee's conduct does not amount to a pattern of racketeering activity), *with Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450-51 (9th Cir. 1997) (discussing the Supreme Court's interpretation of "pattern" under RICO).

Moreover, it is unclear whether a billing dispute with a hospital can be considered a RICO violation. In *Grauberger v. St. Francis Hospital*, the court considered allegations that St. Francis Hospital committed RICO violations in relation to a lien on plaintiffs' recovery from an automobile accident. 169 F. Supp. 2d 1172, 1175 (N.D. Cal. 2001). Similar to this case, the plaintiffs in *Grauberger* claimed that the lien filed by St. Francis Hospital was fraudulent, excessive and constituted double billing. *Id*. at 1176. The court was not "persuaded that a billing dispute over the reasonableness or excessiveness of specific hospital charges rises to the level of a criminal act for purposes of RICO liability." *Grauberger*, 169 F. Supp. 2d at 1177 n.6.

In this case, even though Kaiser sent numerous billing statements, the subject of these statements relates to a single event: Mitchell's October 2006 car accident. Contrary to plaintiffs' assertions, a series of hospital billing statements in relation to a single event cannot be considered a

No. C 09-05306
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

5

"pattern" of RICO activity. Kaiser's actions are more properly considered numerous acts in relation to a single episode, and not a series of separate, related acts. *Server*, 978 F.2d at 1535. Accordingly, the FAC does not indicate that defendants engaged in a "pattern" of RICO activity.

2. Racketeering Activity

In the FAC, plaintiffs argue that Kaiser committed mail fraud by sending various billing statements to Mitchell through the United States Postal Service and via fax. Plaintiffs also accuse defendants of committing "extortion," but fail to present facts in support of this allegation. Defendants argue that the FAC pleads no facts which would reasonably indicate that the billing statements were materially false. Defendants claim that even if plaintiffs feel these charges are too high or include erroneous entries, the FAC does not indicate that defendants had an intent to defraud.

In order to allege a violation of the mail fraud statute, plaintiffs must demonstrate: "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber Distributing Co v. Serv-Well Furniture Co.*, Inc. 806 F.2d 1393, 1400 (9th Cir. 1986) (*citing United States v. Green*, 746 F.2d 1205, 1207-08 (9th Cir. 1984)). The FAC falls woefully short of this standard. It includes facts about the means used to transmit the billing statements, but does not provide any information about Kaiser's allegedly fraudulent scheme, or facts which would indicate that Kaiser intended to defraud plaintiffs. Additionally, plaintiffs' general and conclusory assertions of "extortion" are insufficient to show that defendants engaged in racketeering activity. *See, e.g. Grauberger*, 169 F. Supp. 2d at 1176; *Alan Neuman Productions, Inc v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (conclusory allegations of fraud that do not comply with Fed. R. Civ. P. 9(b) particularity requirements are a "factual defect" when seeking to sustain a RICO claim); *Schreiber*, 806 F.2d at 1400 (RICO claim based on fraud must be plead with particularity sufficient to satisfy Fed. R. Civ. P. 9(b)).

Plaintiffs attempt to augment their RICO claim in the FAC by alleging that defendants' fraudulent activity included violations of the "common fund" rule. Under California law, when

"two or more parties are entitled in common to a fund created by a recovery from a third party, and the costs of litigation have been borne by only one of them, the courts in the exercise of their inherent equitable powers will require the apportionment of costs and attorney fees." *Samura v. Kaiser Foundation Health Plan, Inc*., 17 Cal. App. 4th 1284, 1297 (Cal. Ct. App. 1993) (*citing Lee v. State Farm Mutual Auto. Ins. Co.,* 57 Cal. App. 3d 458, 466-68 (Cal. Ct. App. 1976)). Plaintiffs claim that Kaiser engaged in a "pattern of not recognizing California law and the common fund doctrine." FAC ¶ 18 at 5:24-25. Kaiser interprets *Samura* as indicating that there is no duty to advise a subscriber of the common fund rule when the subscriber enters into a contract with a health care provider. 17 Cal. App. 4th at 1298. In light of this decision, Kaiser argues that there is neither a need nor a duty to explain the common fund doctrine to the plaintiffs' attorney. Although it is unclear whether *Samura* stands for this principle, defendants' failure to reduce the hospital billing statements according to the common fund rule does not implicate the kind of racketeering activity that would give rise to a RICO violation.

3. <u>Injury to Plaintiffs</u>

Defendants also argue that plaintiffs have failed to allege an injury to "business or property" as required by RICO. 18 U.S.C. § 1964(c). In *Hemi Group, LLC v. City of New York*, the Supreme Court declared, "[o]ur precedent makes clear, moreover, that the compensable injury flowing from a [RICO] violation . . . necessarily is the harm caused by [the] predicate acts." --- U.S. ----, ----, 130 S. Ct. 983, 991, --- L.Ed.2d ----, ---- (2010) (internal quotation marks omitted) (*quoting Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 454-55 (1991); *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 497 (1985)). The Court held that New York City could not demonstrate that the Hemi Group's alleged RICO violations caused their damages, and therefore the city did not state a claim under RICO. *Hemi Group*, 130 S. Ct. at 992.

Similarly, plaintiffs' alleged damages consist of the cost incurred in hiring an expert during the personal injury litigation with a third party, and those expended to evaluate the OIA board members before the Kaiser arbitration. It does not appear that Kaiser's allegedly fraudulent activity *caused* plaintiffs' injury. While their alleged damages occurred because defendants supposedly

No. C 09-05306
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

7

refused to produce billing statements in a timely fashion, plaintiffs do not allege this delay violated RICO. In fact, the alleged RICO violation occurred *after* plaintiffs incurred expert litigation costs. Additionally, it does not appear that Kaiser forced plaintiffs to incur costs in researching the background of the OIA board members before engaging in arbitration. In light of these causal deficiencies between defendants' actions and plaintiffs' injuries, plaintiffs have not sufficiently amended the damages portion of their Complaint.

### 4. RICO Liability of Kaiser Attorneys

Plaintiffs also allege that Kaiser's attorneys, Thomas Dunn and Robert Keisler, and their employer, Gibson & Sharps (collectively, "Kaiser attorneys") violated RICO. Plaintiffs claim that the Kaiser arbitration system is a fraudulent enterprise under that statute. If a Kaiser member has a billing dispute, they are required to submit to arbitration with the OIA, and Kaiser's attorneys receive a portion of their income from representing Kaiser during these OIA arbitrations. Plaintiffs argue that this agreement constitutes a RICO enterprise, and that all parties involved are liable under the statute. However, as discussed above, the FAC does not reflect that Kaiser engaged in a pattern of racketeering activity. Similarly, the FAC does not include any facts which would indicate that the Kaiser attorneys engaged in a pattern of racketeering activity and avers only that they maintained a professional connection to Kaiser. In short, the FAC does not state a RICO claim against the Kaiser attorneys, and must be dismissed without leave to amend.

The additions to the RICO claim in plaintiffs' latest complaint do not satisfy the heightened pleading standards of Rule 9(b). The FAC has not alleged any facts that would indicate that Kaiser engaged in a pattern of activity, that the sending of billing statements constituted a RICO activity, or that Kaiser's actions caused plaintiffs' damages. This Court previously granted plaintiffs leave to amend that claim, and plaintiffs have failed to add the requisite particularity to the FAC. Granting further leave to amend that claim would be futile. *See, Zucco Partners, LLC, v. Digimarc Corp.*, 552 F.3d at 1007. Accordingly, plaintiffs' RICO claim is dismissed without leave to amend.

### C. FDCPA Claim

The FAC includes an additional claim for relief under the FDCPA. Plaintiffs allege that Kaiser is a "debt collector" and that any money owed to defendants is "debt" under the FDCPA. Additionally, plaintiffs claim that Kaiser engaged in "abusive and deceptive" conduct in violation of the FDCPA. Plaintiffs also allege, in conclusory fashion, that "[i]n doing the [RICO] acts alleged above, Kaiser Gibson & Sharps, Keisler, Dunn, and each of them violated provisions of the FDCPA," and that Mitchell was damaged by defendants' actions. FAC ¶ 54 15:10-11; ¶ 55 15:12.

### 1. Statute of Limitations

Defendants raise a number of arguments against this new claim for relief. First, defendants argue that plaintiffs are barred from bringing a claim under the FDCPA because of the statute's one year statute of limitations. An action to enforce liability under the FDCPA may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Kaiser sent an initial billing statement on January 9, 2008. Therefore, defendants argue that the statute of limitations for the FDCPA claim was January 9, 2009, and that plaintiffs' original Complaint filed in November of 2009 came too late. In their response to defendants' motion, plaintiffs argue that the statute of limitations began to run on October 10, 2009 when Mitchell received notice that Kaiser re-opened the arbitration with OIA, which would make the original Complaint timely. Even if the Court were to accept plaintiffs' statute of limitations argument, as explained below, plaintiffs have failed sufficiently to allege that the FDCPA applies to this case.

### 2. Kaiser is not a "Debt Collector" Under the FDCPA

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In this case, Kaiser sent Mitchell the billing statements so that it could obtain the portion of the personal injury settlement it was allegedly owed. Kaiser was attempting to recover the amount it spent on Mitchell's treatment in relation to the 2006 car accident, which indicates that they are more properly considered a "creditor." The FDCPA is only applicable to a creditor who attempts to collect its own debt by

using "any name other than its own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). In the FAC, plaintiffs simply cite the FDCPA and assert that Kaiser and/or Kaiser's attorneys are "debt collectors" under the statute. A mere assertion that defendants "are debt collectors without providing any supporting facts demonstrating that they engage in a business the principal purpose of which is the collection of debts" is insufficient to state a claim for relief under the FDCPA. *Swain v. CACH, LLC*, 699 F. Supp. 2d 1109, 1112-13 (N.D. Cal. 2009). Accordingly, the FAC does not demonstrate that defendants are "debt collectors" as defined by the FDCPA.

### 3. The Billing Statements are not Considered "Debt" Under the FDCPA

Kaiser further argues that the billing statements cannot be defined as "debt" under the FDCPA. That statute defines "debt" as "any obligation or alleged obligation of a consumer to pay money." 15 U.S.C. § 1692a(5). Moreover, the FDCPA only applies to debt which was in default. 15 U.S.C. § 1692a(6)(f) (debt which was not in default at the time it was obtained by a debt collector is excluded from the statute). Here, the money Kaiser sought to collect from Mitchell relates to the amount he was expected to recover from the settlement of the personal injury lawsuit. A portion of that settlement presumably included medical care that was paid for by Mitchell's insurer, Kaiser. The FAC does not include any facts which would indicate that these billing statements relate to debt, or that this alleged debt was in default.

### 4. Inadequate Allegations that Defendants Have Engaged in False or Misleading Conduct

Finally, Kaiser argues that plaintiffs have failed to allege that Kaiser engaged in "false or misleading" conduct in violation of the FDCPA. Indeed, the FAC does not include any additional facts in support of the FDCPA claim, and simply states that by engaging in the alleged RICO actions, defendants also violated the FDCPA.

The FAC recites the statutory elements of a FDCPA claim, but does not contain any facts which would indicate that the statute is applicable in this case. The billing statements do not relate to any "debt" Mitchell owed to the defendants, nor does it appear that defendants can be considered

"debt collators" under the statute. Accordingly, plaintiffs have failed to state a claim for relief under the FDCPA, and defendants' motion to dismiss should be granted with leave to amend.

D.  State Law Claims

The FAC includes state law claims against Kaiser and Kaiser's attorneys for negligence, breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing. The FAC includes a number of amendments to this section of the original Complaint.

1. Negligence and Breach of Fiduciary Duty Claims

In support of the negligence claim, the FAC alleges that Kaiser had a duty to "conform their conduct to certain standards," including "timely and accurate responses to request for billing records; and, proper reduction of bills under the common fund doctrine." FAC ¶ 33 at 9:5-8. Plaintiffs allege that defendants breached this duty, which caused them to incur additional costs in the personal injury litigation and amass attorneys fees in relation to the Kaiser arbitration claims. Additionally, plaintiffs claim that Kaiser had a fiduciary duty to plaintiffs. Aside from these general allegations, the FAC does not include facts which would indicate that Kaiser had a general or fiduciary duty towards plaintiffs. Merely stating that Kaiser had such a duty to plaintiffs, without any facts to support the existence of a duty, is insufficient to state a claim for negligence or breach of fiduciary duty. Accordingly, those claims against Kaiser are dismissed with leave to amend.

2. Breach of Contract and Breach of the Covenant of Good Faith Claims

In support of the breach of implied covenant of good faith and fair dealing claim, the FAC includes information about how Mitchell came to be insured by Kaiser, allegations relating to Kaiser's relationship with the OIA, and the allegedly biased nature of the arbitrators employed by the OIA. Defendants argue that Kaiser's pursuit of third party liability reimbursement claims cannot support plaintiffs' claim for breach of the implied covenant of good faith or breach of fiduciary duty. *See Enodis Corp. v. Employers Insurance Company of Wausau*, No. 03-866, 2007 U.S. Dist. LEXIS 97819, at *34-35 (C.D. Cal. Mar. 12, 2007) (holding that plaintiff could not claim that the insurance company breached the implied covenant of good faith and fair dealing to limit the discretion the insurance company had under the policy in order to seek reimbursement for expenses

1  related to particular claims). Defendants argue that Kaiser's duty of good faith performance of its
2  contract extends only to providing "security" and "peace of mind" that underlie the contract for
3  health insurance coverage. *See Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1148 (Cal. Ct. App.
4  1990). Aside from the general allegations about Kaiser's relationship with the OIA and the alleged
5  bias of the OIA, the FAC does not include any facts supporting plaintiffs' contention that Kaiser
6  acted in bad faith throughout the arbitration proceedings. Therefore, the breach of contract and
7  breach of implied covenant of good faith and fair dealing claims are dismissed with leave to amend.

### 3. Negligence Claim Against Kaiser Attorneys

The FAC alleges that the six claims for relief are applicable to all defendants, including the Kaiser attorneys. At the hearing on this motion, however, plaintiffs acknowledged that only the RICO, FDCPA, and negligence claims are alleged against them. As discussed above, the RICO and FDCPA claims have been dismissed, and therefore, the only remaining claim against the Kaiser attorneys is the state law negligence claim.

The FAC fails to allege a viable negligence claim against them. The FAC merely demonstrates that Kaiser and the Kaiser attorneys had an attorney-client relationship, and that during the course of that relationship, Kaiser attorneys represented their client in the OIA arbitration proceedings. The Kaiser attorneys' interactions with plaintiffs were on behalf of their client, and it does not appear that these give rise to a duty of care to plaintiffs. *See, Goodman v. Kennedy*, 18 Cal. 3d 335, 343-44 (Cal. 1976) (attorneys do not owe a duty to non-clients when they only deal with those clients at an "arm's length"). Moreover, the general factual allegations in the FAC do not differentiate between Kaiser's alleged duties to plaintiffs and Kaiser attorneys' alleged duties to plaintiffs. The FAC alleges solely in a conclusory fashion that the Kaiser attorneys had a duty to plaintiffs and does not include any facts which would suggest that they had any such duty. Accordingly, the state law claims against the Kaiser attorneys and Gibson & Sharps are dismissed with leave to amend.

## V. CONCLUSION

The FAC does not comply with the pleading requirements of Rule 8(a) or, where applicable,

Rule 9(b). The motion to dismiss the FDCPA claim and the state law claims is GRANTED with leave to amend. The motion to dismiss the RICO claim is GRANTED without leave to amend. Plaintiffs must file any amended complaint within 20 days from the date of this order.

IT IS SO ORDERED.

Dated: 12/22/10

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE